No. 15-1502

## In The

# United States Court of Appeals

### For The

# Seventh Circuit

UNITED STATES *ex rel.* JAMES GARBE,

Relator-Appellee,

v.

KMART CORPORATION,

Defendant-Appellant.

On Appeal from the United States District Court
for the Southern District of Illinois
No. 12-CV-881
The Honorable Nancy Rosenstengel, Presiding.

**Brief of U.S. Senator Charles E. Grassley
as *Amicus Curiae* in Support of Appellee for Affirmance**

Harold J. Krent
Chicago-Kent College of Law
565 West Adams Street
Chicago, IL 60035
(312) 906-5010

David C. Frederick
Kellogg, Huber, Hansen, Todd,
Evans & Figel, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, DC 20036
(202) 326-7951

*Counsel for Senator Charles E. Grassley*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 15-1502

Short Caption: U.S. ex rel. James Garbe v. Kmart Corp.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [✔] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Senator Charles E. Grassley

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings

Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.

(3) If the party or amicus is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

N/A

---

Attorney's Signature: s/ David Frederick                    Date: 8/10/2015

Attorney's Printed Name: David Frederick

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ✕   **No** _____

Address: 1615 M. Street, NW, Suite 400

Washington, DC 20036

Phone Number: (202) 367-7744                    Fax Number: (202) 326-7999

E-Mail Address: dfrederick@khhte.com

rev. 01/15 GA

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 15-1502

Short Caption: U.S. ex rel. James Garbe v. Kmart Corp.

  To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

  The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[✔]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Senator Charles E. Grassley

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Harold J. Krent

Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.

(3)  If the party or amicus is a corporation:

i)  Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

N/A

Attorney's Signature:  s/  Harold J. Krent          Date: 8/10/2015

Attorney's Printed Name:  Harold J. Krent

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** _____  **No** ☒

Address:  565 West Adams Street

Chicago, IL 60035

Phone Number: (312) 906-5010          Fax Number: (312) 906-5280

E-Mail Address: hkrent@kentlaw.iit.edu

rev. 01/15 GA

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... ii

INTEREST OF *AMICUS CURIAE* ............................................................................ 1

SUMMARY OF ARGUMENT ...................................................................................... 2

ARGUMENT ................................................................................................................. 3

I. The District Court Correctly Held That Inflated Pharmacy Claims Submitted For Payment To Medicare Part D Pharmacy Benefit Managers And Plan Sponsors Violate The False Claims Act. ....................................................................................... 3

    A. Congress Explicitly Extended The Reach Of The False Claims Act To Cover False Claims Submitted To Recipients Of Federal Funds. ........................................... 3

    B. The Funds Used To Pay For Prescriptions Covered By Medicare Part D Are Medicare Trust Funds, And They Are Therefore Federal Funds. ................................. 7

    C. The District Court Correctly Held That A Pharmacy's Overcharges To Medicare Part D Pharmacy Benefit Managers And Plan Sponsors Are Material. ....................................................................................................................... 8

    D. Overcharges For Medicare Part D-Covered Pharmacy Prescription Claims Are Actionable Under The False Claims Act. ................................................................... 9

II. The District Court Correctly Held That The FERA Amendments At Issue Apply Retroactively And Congressionally Overrule *Allison Engine*. ......................................... 10

CONCLUSION ............................................................................................................. 14

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7) ................................................. 15

CERTIFICATE OF SERVICE ......................................................................................... 16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allison Engine Co.* v. *United States ex rel. Sanders*,
553 U.S. 662 (2008)........................................................................2, 5, 6, 10, 11, 12, 13, 14

*Middleton v. City of Chicago*,
578 F.3d 655 (7th Cir. 2009) ...................................................................................................11

*Sanders v. Allison Engine Co.*,
703 F.3d 930 (6th Cir. 2012). .............................................................................................12, 13

*United States v. Azzarelli Constr. Co.*,
647 F. 2d 757 (7th Cir. 1981) ................................................................................................2, 8, 9

*United States ex rel. Simmons v. Smith*,
629 F. Supp. 124 (S.D. Ala. 1985)..............................................................................................3

*United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*,
944 F.2d 1149 (3d Cir. 1991)......................................................................................................3

*United States ex. rel. Totten* v. *Bombardier Corp.*,
380 F.3d 488 (D.C. Cir. 2004) ........................................................................................5, 8, 9, 10

*United States ex rel. Wall v. Circle C Constr., L.L.C.*,
697 F.3d 345 (6th Cir. 2012) ....................................................................................................10

*United States ex rel. Wisconsin v. Dean*,
729 F.2d 1100 (7th Cir. 1984) ....................................................................................................3

*United States ex rel. Yannacopoulos v. Gen. Dynamics*,
652 F.3d 818 (7th Cir. 2011) ....................................................................................................12

**Statutes**

31 U.S.C. § 231 (1976) ..................................................................................................................3

31 U.S.C. § 3729 (2009) ...............................................................................................2, 9, 12, 13

31 U.S.C. § 3729 (2000). ...............................................................................................................6

False Claims Amendments Act of 1986, Pub. L. No. 99-562,
100 Stat. 3153 ...............................................................................................................1, 4, 9

Fraud Enforcement & Recovery Act of 2009, Pub. L. No. 111-21,
123 Stat. 1617 ..............................................................................1, 6, 10, 11, 12, 13

**Legislative Materials**

FALSE CLAIMS AMENDMENTS ACT OF 1986, S. REP. NO. 99-345 (1986) ................................4, 5, 9

FRAUD ENFORCEMENT & RECOVERY ACT OF 2009, S. REP. NO. 111-10 (2009)................5, 6, 7, 10

**Other Authorities**

2007 Annual Report of the Boards of Trustees of the Federal Hospital Insurance
and Federal Supplementary Medical Insurance Trust Funds......................................................7

2014 Annual Report of the Boards of Trustees of the Federal Hospital Insurance
and Federal Supplementary Medical Insurance Trust Funds......................................................8

*Justice Department Recovers Nearly $6 Billion from False Claims Act Cases in
Fiscal Year 2014*, Department of Justice Office of Public Affairs (Nov. 20, 2014) .................1

Brief For Appellant the United States of America, *Sanders v. Allison Engine Co.*,
Nos. 10-3818 & 10-3821, ECF No. 45-1 (6th Cir. Sep. 13, 2010)...........................................13

**INTEREST OF *AMICUS CURIAE***

The False Claims Act (FCA) is the Government's principal and most effective statutory tool for combating fraud and abuse perpetrated against federally-funded contracts and programs. In fiscal year 2014 alone, the Department of Justice recovered a record $5.69 billion in civil FCA settlements and judgments, and recoveries from 2009 through the end of fiscal 2014 amounted to $22.75 billion, more than half the recoveries since Congress amended the Act in 1986.[1]

*Amicus curiae* Senator Charles E. Grassley was the principal Senate sponsor of the False Claims Amendments Act of 1986, Pub. L. No. 99-562, 100 Stat. 3153, and one of the Senate sponsors of the Fraud Enforcement & Recovery Act of 2009 (FERA), Pub. L. No. 111-21, 123 Stat. 1617. The 1986 and 2009 amendments substantially strengthened the original False Claims Act as enacted in 1863 and aimed to correct questionable court decisions which limited the Act's reach.

Senator Grassley's views on the intent of Congress with respect to the modern False Claims Act warrant this Court's consideration because he was the principal sponsor of the 1986 and 2009 amendments, and he remains active in Congress defending the original intent of the legislation. As the chief proponent of the FCA amendments and a vigilant observer of their application, Senator Grassley has a strong interest in correct judicial interpretations of the statute. In the present case, Appellant asks this Court to construe the 1986 and 2009 amendments in a manner diametrically opposed to the clearly-expressed intent underlying both. Senator Grassley therefore submits this brief to assist the Court.

---

[1] *See Justice Department Recovers Nearly $6 Billion from False Claims Act Cases in Fiscal Year 2014*, DEPARTMENT OF JUSTICE OFFICE OF PUBLIC AFFAIRS (Nov. 20, 2014) (http://www.justice.gov/opa/pr/justice-department-recovers-nearly-6-billion-false-claims-act-cases-fiscal-year-2014).

## SUMMARY OF ARGUMENT

Appellant contends that the indirect and fixed nature of the Government's payments preclude liability under the False Claims Act. However, Congress has deliberately foreclosed these arguments through legislation. This Court held in *United States v. Azzarelli Construction Co.*, 647 F. 2d 757 (7th Cir. 1981), that the False Claims Act did not apply where the Government payments at issue were fixed. Congress explicitly overruled that decision when it amended the FCA in 1986. Likewise, the Supreme Court held in *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662 (2008), that a subcontractor in a large Government contract who knowingly submits a false claim to a general contractor and gets paid with Government funds could nonetheless avoid liability because the claim was not submitted directly to the Government. But Congress had intended to foreclose that argument with the broad definition of "claim" in the 1986 amendments. Thus, to correct the Supreme Court's plain error, Congress retroactively overruled *Allison Engine* almost immediately after it was handed down.

The district court thus correctly concluded that 31 U.S.C. § 3729(a)(2), which applies retroactively to cases pending on or before June 7, 2008, does not require presentment of false claims to a federal agency or Government employee. The court also appropriately rejected Appellant's arguments based on the "fixed" nature of Medicare Part D payments to the private entities charged with disbursing Part D funds to pay for Medicare beneficiaries' prescription drug claims. The interpretations that Appellant advocates are inconsistent with the clear intent of Congress and the plain language of the 1986 and 2009 False Claims Act amendments.

**ARGUMENT**

**I. The District Court Correctly Held That Inflated Pharmacy Claims Submitted For Payment To Medicare Part D Pharmacy Benefit Managers And Plan Sponsors Violate The False Claims Act.**

    **A. Congress Explicitly Extended The Reach Of The False Claims Act To Cover False Claims Submitted To Recipients Of Federal Funds.**

Even before 1986, the False Claims Act sought to protect taxpayer funds against fraud by providing for double damages against any person "who shall make or cause to be made, or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, any claim upon or against the Government of the United States, or any department or officer thereof . . . ." 31 U.S.C. § 231 (1976). The Act further provided for damages against any person

> who, for the purpose of obtaining or aiding to obtain the payment or approval of such claim, makes, uses, or causes to be made or used, any affidavit, knowing the same to contain any fraudulent or fictitious statement or entry, or who enters into any agreement, combination, or conspiracy to defraud the Government of the United States, or any department or officer thereof, by obtaining or aiding to obtain the payment or allowance of any false or fraudulent claim.

*Id.* This pre-1986 language was broad in the scope of its protections, and it did not impose conditions on those protections for Government funds based solely on what entity actually paid or administered them. Nevertheless, some courts still read such limitations into the Act. *See, e.g.*, *United States ex rel. Simmons v. Smith*, 629 F. Supp. 124 (S.D. Ala. 1985).

Those rulings, along with unfortunate language enacted in 1946 that imposed a nearly impossible government knowledge bar to *qui tam* plaintiffs, weakened the Act, and allowed increasing fraud upon Government contracts and programs to continue unidentified and largely unprosecuted. *See United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1153-54 (3d Cir. 1991) (discussing such "restrictive interpretations," such as *United States ex rel. Wisconsin v. Dean*, 729 F.2d 1100, 1106 (7th Cir. 1984) (holding

3

that the "district court had no jurisdiction over a *qui tam* action brought by Wisconsin based on information of Medicaid fraud the state had uncovered because the state had reported the Medicaid fraud to the federal government as required under the Act")). Congress therefore set out to strengthen the statute and correct problematic court rulings.

In 1986, Congress amended the False Claims Act to, among other things, plainly and unambiguously define a false "claim." Pub. L. No. 99-562, § 2, 100 Stat. 3153. That definition ensured that a claim would

> include[] any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, *grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded*, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.

*Id.* (emphasis added). The language explicitly codified a strong, broad protection for Government funds without an unreasonable limit on the party who directly paid them. Even if the funds were fraudulently obtained from a grantee or other third party, as long as "any portion" of the money was taxpayer money, it was covered. Further, the legislative record on this point is clear. The Senate Report asserts that Congress expressly intended these amendments to "clarif[y] that the statute permits the Government to sue under the False Claims Act for frauds perpetrated on Federal grantees, including States and other recipients of Federal funds." FALSE CLAIMS AMENDMENTS ACT OF 1986, S. REP. NO. 99-345 at 21. The Report also was clear that Congress specifically intended this clarification to correct limiting court interpretations:

> Some courts have concluded that once the United States has made the grant to the State, local government unit, or other institution, it substantially relinquishes all control over the disposition of the money or commodities and requires only that the grantee shall make periodic reports of its disbursements and activities. Where this is the case, the judicial determination may follow that a fraud against the grantee does not constitute a fraud against the Government of the United States with the result that the False Claims Act is inapplicable.

*Id.*

Congress even expressly contemplated that the broad language it employed would cover the very kind of situations presented in this case under Government-funded programs like Medicare. As discussed in the 1986 Senate Report, although "[u]nder the Medicare program, claims are not submitted directly to the Federal agency, but rather to private intermediaries," "false Medicare claims have been uniformly held to be within the ambit of the False Claims Act, though the claims were actually filed with, and paid by insurance companies." *Id.* at 21-22 (citing *Peterson v. Weinberger*, 508 F.2d 45 (5th Cir. 1975); *United States v. Beasley*, 550 F.2d 261, 271 (5th Cir. 1977)).

Nevertheless, and despite the plain language of the 1986 amendments, some courts continued to hold that liability under the FCA can only attach if the claim is "presented to an officer or employee of the Government." The two leading cases were *Allison Engine Co.* v. *United States ex rel. Sanders*, 553 U.S. 662 (2008), and *United States ex. rel. Totten* v. *Bombardier Corp.*, 380 F.3d 488 (D.C. Cir. 2004). Both cases interpreted the FCA to require "presentment" to an officer or employee of the Government, and *Allison Engine* further interpreted the Act to require a specific intent to defraud the Government, not merely an intent to obtain Government funds. *See* FRAUD ENFORCEMENT & RECOVERY ACT OF 2009, S. REP. NO. 111-10 at 10 (*Allison Engine* and *Totten* erroneously interpreted the so-called "presentment clause" of the FCA "to limit recovery for frauds committed by a Government contractor when the funds are expended by a Government grantee, such as Amtrak"). Those decisions "r[an] contrary to the clear language and congressional intent of the FCA by exempting subcontractors who knowingly submit false claims to general contractors and are paid with Government funds." S. REP. NO. 111-10 at 10-11.

Congress took aim at these erroneous interpretations in 2009, when it passed the Fraud Enforcement & Recovery Act (FERA). As the title of FERA's Section 4 explicitly noted, the amendments were "CLARIFICATIONS TO THE FALSE CLAIMS ACT TO REFLECT THE ORIGINAL INTENT OF THE LAW." Pub. L. No. 111-21, § 4, 123 Stat. 1617, 1621. The 2009 amendments removed the erroneously interpreted language from section 3729(a)(1), which required a false claim be presented to "an officer or employee of the Government, or to a member of the Armed Forces." 31 U.S.C. § 3729(a)(1)(2000). The 2009 deletion of the "presentment" language abrogated courts' stated justification for unduly limiting the Act's scope and leaving many sources of Government funds unprotected.

Further, as with the 1986 amendments, Congress fully explained in 2009 that its purpose was to clarify the Act's scope and avoid the consequences of courts' efforts to narrow it. For example, the Senate Report accompanying FERA pointedly noted the absurd result of the Supreme Court's views in *Allison Engine*, which required a finding of specific intent that the "Government itself would pay a claim." 553 U.S. at 669. "As a result" of that ruling, the Senate Report noted, "even when a subcontractor in a large Government contract *knowingly* submits a false claim to a general contractor and *gets paid with Government funds*, there can be no liability unless the subcontractor intended to defraud the Federal Government, not just their general contractor." S. REP. NO. 111-10 at 10 (emphases added). The Senate Report concluded that this result "[wa]s contrary to Congress's original intent in passing the law and create[d] a new element in a FCA claim and a new defense for any subcontractor that are inconsistent with the purpose and language of the statute." *Id.* That Report also explained that it expressly intended the 2009 amendments to apply "whenever a person knowingly makes a false claim to obtain money or property, *any part of which is provided by the Government without regard to whether the*

*wrongdoer deals directly with the Federal Government*; with an agent acting on the Government's behalf; or with a third party contractor, grantee, or other recipient of such money or property." *Id.* at 11 (emphases added). Thus, the purpose for enacting FERA was to foreclose the argument that a private entity that distributes Government funds on behalf of the Government is not "the Government" for purposes of the FCA.

Further, the Senate Report noted that Congress took pains to provide explicitly that the amendments are

> *consistent with the intent of Congress in amending the definition of "claim" in the 1986 amendments* to include "any request or demand * * * for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded."

S. REP. NO. 111-10 at 11 (quoting 31 U.S.C. § 3729(c) (2000)) (emphasis added). It *has never been* the intent of Congress to foreclose consequences for third parties who fraudulently obtain Government funds.

**B. The Funds Used To Pay For Prescriptions Covered By Medicare Part D Are Medicare Trust Funds, And They Are Therefore Federal Government Funds.**

There can be no serious dispute that the funds used to pay for Part D-covered prescriptions are Government funds. As the Annual Reports of the Medicare Trustees have explained since the inception of the Part D program in 2006, "[t]he major sources of revenue for the Part D account are (i) contributions of the Federal Government that are authorized to be appropriated and transferred from the general fund of the Treasury, (ii) premiums paid by eligible persons who voluntarily enroll, and (iii) contributions from the States." 2007 ANNUAL REPORT OF THE BOARDS OF TRUSTEES OF THE FEDERAL HOSPITAL INSURANCE AND FEDERAL SUPPLEMENTARY MEDICAL INSURANCE TRUST FUNDS at 108 (https:/www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-Reports/ReportsTrustFunds/downloads/

7

tr2007.pdf). "In calendar year 2006, contributions received from the general fund of the Treasury amounted to $39.1 billion, which accounted for 81.0 percent of total revenue." *Id*. at 109. The same is still true today; the lion's share of funding of the Part D program comes from the general fund of the Treasury. *See* 2014 ANNUAL REPORT OF THE BOARDS OF TRUSTEES OF THE FEDERAL HOSPITAL INSURANCE AND FEDERAL SUPPLEMENTARY MEDICAL INSURANCE TRUST FUNDS at 103 (http://www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-Reports/ ReportsTrustFunds/downloads/tr2014.pdf) (total premium payments in 2013 "amounted to an estimated $9.9 billion or 14.3 percent of total revenue" and contributions received from the general fund of the Treasury "amounted to $51.0 billion, which accounted for 73.1 percent of total revenue"). It is difficult to understand how funds derived directly from the federal Treasury are not Government funds that the False Claims Act is designed to safeguard.

**C. The District Court Correctly Held That A Pharmacy's Overcharges To Medicare Part D Pharmacy Benefit Managers And Plan Sponsors Are Material.**

Appellant contends at least in part that because the Government's monthly payments to Part D Pharmacy Benefit Managers (PBMs) and Plan Sponsors are "fixed" sums, a pharmacy's overcharges for generic drug prescriptions covered by Medicare Part D are not "material." "Fixed" payments, Appellant contends, do not cause the Government to pay out more money than it otherwise would. Appellant's Br. at 34-35, 49-51. That argument has lacked merit since at least the time of the enactment of the 1986 amendments.

Prior to the 1986 amendments, this Circuit held in *United States v. Azzarelli Constr. Co.*, 647 F.2d 757 (7th Cir. 1981), that "because the federal funds at issue were … 'fixed …,' the False Claims Act did not apply." *Totten*, 380 F.3d at 495 (discussing *Azzarelli*). Congress explicitly overruled that holding. As the Senate Report from 1986 noted, such a "narrow reading of the act throws the entire burden of prosecuting fraud on State officials who may not have the

8

powerful remedies available to the United States under the False Claims Act or the sophisticated investigative resources necessary to even establish the fraud." S. REP. NO. 99-345 at 22. Thus, Congress employed new language, subsection (d), to "overrule *Azzarelli* and similar cases which have limited the ability of the United States to use the act to reach fraud perpetrated on federal grantees, contractors or other recipients of Federal funds." *Id.*

The new subsection 3729(d) not only "clarifie[d] that the statute permits the Government to sue under the False Claims Act for frauds perpetrated on Federal grantees, including States and other recipients of Federal funds," S. REP. NO. 99-345 at 21, it expressly defined a "claim" to "include[] any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides *any portion* of the money or property which is requested or demanded." Pub. L. No. 99-562, § 2, 100 Stat. 3153 (emphasis added). As then-Circuit Judge Roberts explained in *Totten* (one of the cases FERA later overruled in other respects, as discussed above), Congress "most clearly intended to overrule" *Azzarelli* with the 1986 amendments to the False Claims Act. *Totten*, 380 F.3d at 495. Thus, since at least 1986, "the fixed nature of a federal grant would be no bar to a claimant's liability." *Id*.

### D. Overcharges For Medicare Part D-Covered Pharmacy Prescription Claims Are Actionable Under The False Claims Act.

The False Claims Act defines "claim" to include "any request or demand … for money … which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money." 31 U.S.C. § 3729(b)(2) (2009). Appellant advocates a result that not only conflicts with plain statutory language and clearly expressed Congressional intent, but also makes little sense. According to Appellant, the Government has little or no recourse against pharmacies that fraudulently divert Medicare Part D funds to themselves, despite the

obvious deleterious impact on the integrity of the Medicare Program. In other words, Appellant contends that even though Part D PBMs and Plan Sponsors disburse billions of dollars of Part D benefits each year, if a pharmacy submits a false claim to a PBM or Sponsor, that would be a matter strictly between that pharmacy and the PBM or Sponsor. Even Appellant does not contend (nor could it credibly do so) that this would be true of any other part of the Medicare program, but rather *only* with respect to the Part D program. Congress had no reason to treat the Part D program differently, and it did not. That result would be an absurd anomaly, immunizing such false claims that unequivocally are based at least in part on federal funds. The district court correctly rejected it, and this Court should as well.

## II. The District Court Correctly Held That The FERA Amendments At Issue Apply Retroactively And Congressionally Overrule *Allison Engine*.

The Supreme Court decided *Allison Engine* on June 9, 2008, and FERA was signed into law on May 20, 2009. FERA expressly provided that "subparagraph (B) of section 3729(a)(1) of title 31, United States Code, as added by subsection (a)(1), shall take effect as if enacted on June 7, 2008, and apply to all claims under the False Claims Act (31 U.S.C. §§ 3729 *et seq.*) that are pending on or after that date." Pub. L. No. 111-21, § 4(f)(1), 123 Stat. 1617, 1625. The June 7, 2008 retroactivity date is significant because it was two days before *Allison Engine* was decided. The self-evident purpose of that date is that Congress intended FERA to overrule *Allison Engine* as if the Supreme Court had never issued its erroneous opinion, thereby completely eliminating any precedential effect it otherwise would have. *See* S. REP. NO. 111-10 at 10 ("This section amends the FCA to clarify and correct erroneous interpretations of the law that were decided in *Allison Engine* and *Totten*."); *see also United States ex rel. Wall v. Circle C Constr., L.L.C.*, 697 F.3d 345, 356 n.3 (6th Cir. 2012) (with respect to the FERA amendments to subsection

3729(a)(2), "Congress amended this portion of the FCA to legislatively overrule *Allison Engine*").

Moreover, Congress's labeling of these provisions of FERA as "clarifications" of the False Claims Act is similarly significant. Congress took a "belt and suspenders" approach, knowing that legislation that "merely clarifie[s], rather than alter[s], existing law … is not typically subject to a presumption against retroactivity and is applied to all cases pending on the date of enactment." *Middleton v. City of Chicago*, 578 F.3d 655, 663 (7th Cir. 2009) (citing *ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 689 (9th Cir. 2000) ("Normally, when an amendment is deemed clarifying rather than substantive, it is applied retroactively.")). Congress fully appreciated the retroactive significance that courts attach to use of the word "clarification," and its use of that word was no accident: Congress intended the 2009 amendments to apply retroactively to cases under the FCA that were pending on or after June 7, 2008. Thus, through both the express retroactivity provision and by designating those portions of the FERA amendments a "clarification" of the FCA, Congress left no room for doubt that it intended the courts should treat those amendments as retroactive "clarifying legislation."

Congress did so by providing that the word "claims" in section 4(f)(1) of FERA refers to false claims submitted for payment or to the Government's claims under section 3729(a)(1)(B) of the False Claims Act. *See* Pub. L. No. 111-21, § 4(f)(1), 123 Stat. 1617, 1625 ("subparagraph (B) of section 3729(a)(1) of title 31, United States Code, as added by subsection (a)(1), shall take effect as if enacted on June 7, 2008, and apply to *all claims under the False Claims Act (31 U.S.C. 3729 et seq.) that are pending on or after that date*" (emphasis added)). This Court has already correctly observed that "the amendment to section 3729(a)(1)(B) [formerly

section 3729(a)(2)] … applies to cases, such as this, that were pending on or after June 7, 2008."

*United States ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 822 n.2 (7th Cir. 2011).

There are at least two conclusive textual clues that "claims" in section 4(f)(1) means "claims made under section 3729(a)(1)(B) of the False Claims Act," and not false claims submitted for payment. First, the only provision of the 2009 amendments that is retroactive to June 7, 2008, is the provision that amends former section 3729(a)(2), correcting the Supreme Court's misinterpretation of that section in *Allison Engine*. Thus, the retroactivity of that amendment does not extend to all FCA "cases," but instead only to FCA "claims" brought under section 3729(a)(1)(B) (formerly section 3729(a)(2)).[2]

Second, the text of the section 4(f)(1) retroactivity provision expressly "appl[ies] to all claims *under the False Claims Act* … that are pending on or after" June 7, 2008. Pub. L. No. 111-21, § 4(f)(1), 123 Stat. 1617, 1625 (emphasis added). A defendant's false claim is not made or submitted "under the False Claims Act." Thus, the plain language of the text itself precludes an interpretation of "claims" to mean "claims for payment" for the simple reason that false "claims for payment" are never "under the False Claims Act." As the Sixth Circuit has recognized, such an interpretation would "yield[] a somewhat nonsensical result."[3] *Sanders v.*

---

[2] *Cf.* Pub. L. No. 111-21, § 4(f)(2), 123 Stat. 1617, 1625 ("section 3731(b) of title 31, as amended by subsection (b); section 3733, of title 31, as amended by subsection (c); and section 3732 of title 31, as amended by subsection (e); shall apply to cases pending on the date of enactment"). Thus, the FERA amendments apply retroactively to claims based on section 3729(a)(1)(B), but apply as of the date of FERA's enactment with respect to claims based on other sections of the FCA.

[3] The Department of Justice also properly understands the phrase "claims under the False Claims Act" in FERA § 4(f)(1) means a civil action or case and cannot logically be understood to mean "claims for payment."

> The key phrase in the disputed clause of FERA § 4(f)(1), "claims under the False Claims Act," cannot refer to an FCA defendant's request for payment because such requests are *never* made *under* the statute – the statute instead is a mechanism designed to allow the United States to recover money wrongfully taken from it.

*Allison Engine Co.* (hereinafter *Allison Engine III*), 703 F.3d 930, 938 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 2855 (2013).

Like this Circuit, the Second and Sixth Circuits have held that "'claim' in § 4(f)(1) refers to a civil action or case." The Sixth Circuit reached that conclusion in post-FERA proceedings in *Allison Engine III*. *See* 703 F.3d at 942; *see also id*. at 940 ("The Second and Seventh Circuits have found that § 4(f)(1) makes the amendments to the former § 3729(a)(2) retroactive to FCA civil actions pending on June 7, 2008") (citing *Yannacopoulos* and *United States ex rel. Kirk v. Schindler Elevator Corp.*, 601 F.3d 94, 113 (2d Cir. 2010), *rev'd on other grounds*, 131 S. Ct. 1885 (2011)).

In addition, as between these two constructions of the phrase "claims under the False Claims Act … that are pending on or after" June 7, 2008, one makes sense and is consistent with Congress's undeniable intent to overrule *Allison Engine*; the other makes the retroactivity date arbitrary and leaves *Allison Engine* intact in any case involving false claims that had been paid prior to June 7, 2008. If the amendment applies to "all claims under [section 3729(a)(1)(B) of] the False Claims Act … that are pending on or after" June 7, 2008, then its effect is to preclude application of the holding of *Allison Engine* to all then-pending and future FCA cases (without disturbing final results in cases that were *no longer pending* on June 7, 2008). That result would "correct" *Allison Engine* in all cases pending on or after June 7, 2008.

In stark contrast to that result, if the "claims" referenced in section 4(f)(1) were merely limited to false claims for payment pending on or after June 7, 2008, the corrective effect of the amendment would be far more limited. Moreover, the June 7 date of the retroactivity provision

BRIEF FOR APPELLANT THE UNITED STATES OF AMERICA, *Sanders v. Allison Engine Co.*, Nos. 10-3818 & 10-3821 at 12 (ECF No. 45-1 at 22) (6th Cir. Sept. 13, 2010), available at https://ecf.ca6.uscourts.gov/ docs1/006110731145.

would be wholly arbitrary and drained of any significance: to the extent the holding of *Allison Engine* were applicable to a given false claim, if that claim had been paid on or before June 6, 2008 (and was thus no longer "pending" on June 7), *Allison Engine* would apply, but if it were paid on or after June 7, 2008, it would not apply. There is no rational explanation attributable to Congress for erecting such an arbitrary dividing line. That result would be untenable, and it should be rejected. And, Appellant has not suggested what conduct Congress conceivably could have wished to protect in not making its changes fully retroactive.

## CONCLUSION

For the foregoing reasons, the district court's judgment should be affirmed.

Dated: August 10, 2015        /s David C. Frederick
                                          One of the counsel for *Amicus Curiae*
                                          U.S. Senator Charles E. Grassley

David C. Frederick
Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, DC 20036
(202) 326-7951

Harold J. Krent
Chicago-Kent College of Law
565 West Adams Street
Chicago, IL 60035
(312) 906-5010

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)**

The undersigned furnishes the following in compliance with Federal Rules of Appellate Procedure 28.1(e)(2)(B) and 32(a)(7):

I hereby certify that this *amicus* brief complies with the page limitation of Fed. R. App. P. 32(a)(7)(A) because it does not exceed 15 pages, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed R. App. P 32(a)(6) and Circuit Rule 32(b) because it has been prepared in a proportionally-spaced typeface using Microsoft Word 2007 in 12-point Times New Roman font in the body and 12-point Time New Roman in the footnotes.

Dated: August 10, 2015                /s David C. Frederick _____
                                               One of the counsel for *Amicus Curiae*
                                               U.S. Senator Charles E. Grassley

David C. Frederick
Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, DC 20036
(202) 326-7951

Harold J. Krent
Chicago-Kent College of Law
565 West Adams Street
Chicago, IL 60035
(312) 906-5010

**CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2015, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: August 10, 2015

/s David C. Frederick
One of the counsel for *Amicus Curiae*
U.S. Senator Charles E. Grassley

David C. Frederick
Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, DC 20036
(202) 326-7951

Harold J. Krent
Chicago-Kent College of Law
565 West Adams Street
Chicago, IL 60035
(312) 906-5010